The case is submitted and when the table is clear, the next case may be called. 156014, 156402, 166356, United States of America v. Henry Irving Ramer and John G. Westine Jr. The oral argument is as follows. 10 minutes for each defendant, 20 minutes for the plaintiff. Mr. Gennari and Mr. Shadd for the defendants. Good morning. Good morning, your honors. Good morning, counsel. I'm David Garneri. I'm from Lexington, Kentucky. I represent Henry Ramer. I was also Mr. Ramer's trial counsel. This is an appeal from a jury verdict convicting Mr. Ramer of 20 of 29 counts of mail fraud, a single count of conspiracy to launder money, and a single count of securities fraud. We raised several issues. Counsel, I know you have 10 minutes. Do you want to reserve an entire? Yes, your honor. Two minutes, please. Okay. I'm sorry, one minute. One minute. One minute, okay. Timekeeper has got that correct. I misspoke there. We believe there were several evidentiary errors that occurred at trial that prevented Mr. Ramer from receiving a fair trial and which necessitate a reversal and a remand. The first one that I would address, and it goes directly to the money laundering count, is the district court allowed the admission of numerous exhibits consisting of bank records from a variety of financial institutions, primarily in the California area. The government conceded that they did not have the certifications that would allow them to be self-authenticated, and they conceded they didn't have a custodian from any of the institutions, but they believed that they could call one of their case agents, the examiner from the Kentucky Department of Financial Institutions, who based on her testimony during her period of time at the Kentucky DFI has familiarized herself with numerous bank records that she herself worked at a bank and that they appeared to her to be the sort of bank records she was familiar with. They appeared to her to be the sort of records made by somebody with knowledge of the events, made at a time close in time to the events being documented. All the things that would be necessary under KRE 8036. The problem is that she didn't have any particular knowledge of those institutions. Her testimony can be nothing other than- Doesn't the fact that those are the records that were produced in response to fairly specific subpoenas provide a link which supplants her actual knowledge? Well, it provides a link that they came from those institutions, but it doesn't, and that's why we would have a certification oftentimes along with the subpoena. What the subpoena doesn't provide the link of is that they were made at or near the time by or from information transmitted by somebody with knowledge, that the record was kept in the course of a regularly conducted activity of a business organization, and that making the record was a regular practice of that activity. The rules don't allow those to be assumed. Even though we may in real life believe that to be the case, there's an and with that. So the government has to prove all of the- The proponent of the evidence has to establish all those things, and the opponent can defeat those by showing that the source or information or circumstances of preparation indicate lack of trustworthiness. We wouldn't have the and if the fact that they look like- I kind of liken this to they look like a duck, they quack like a duck, they walk like a duck, so they must be a duck. Yes, these look like bank records, but the rules don't have a subpoena exception. The rules have very specific requirements that must be put forth, and the cases cited by the government where a postal inspector authenticates records of a local post office or where an FBI agent who has been investigating a particular company has gotten familiar with that company's business practices, that is what the rule has the custodian or an other qualified person. Ms. Gibson just simply wasn't an other qualified person based upon her lack of familiarity with the institutions in question. Counsel, what's the standard of review for that issue? I think it's abuse of discretion. I know that there was an indication in my brief that I think it's de novo because it's a question of law, but I think the underpinning facts of it lead it to be an abuse of discretion. I think the absence of, there just simply is no question that the person who offered the records, to whom the records were offered, didn't even purport to have a knowledge of those institutions. I think that establishes an abuse of discretion. There were additional records introduced. Government exhibits 361A and 361B, which were records from essentially California's Secretary of State, that's not what they call it in California, and then exhibit 363 was from the Arizona Commissions on Corporations. These were prior cease and desist orders. The Arizona one goes back to the late 1980s. The California one was issued in 2003, but it's for conduct in 1998. We think that that too was hearsay. The government hasn't challenged in its brief that it was in fact, that those documents were in fact hearsay, and that they didn't meet any exceptions. What the government has said is, well, the court didn't admit them for the truth of the matter asserted. The court admitted them because they are intrinsic to the fraud, that these investors would not have invested in these particular oil projects had they been aware of the prior cease and desist orders. Well, I think the problem with that argument is, if they're not being offered for the truth of the matter asserted, if you strip them for their factual content, then they have no materiality to an investor's decision. How are they identified? These did have certifications from the California Office of Corporations and from the Arizona. The reason we believe they're hearsay is because in order to meet the, and this is 8038, in order to meet the public records exception, two things have to be true. At least two things have to be true. One is the record itself has to set out the office's activities. These simply don't do that. The other issue, at least with the Arizona one, is the organization reporting has to have observed the proceedings while under a duty, a statutory duty or some lawful duty. In this case, the Arizona Corporations Commission received a recommended report from a hearing officer who was actually the one who presided over in her testimony and observed the proceedings. The three commissioners who signed off on the cease and desist order didn't observe anything. So we don't believe that those qualify as hearsay, but that's where they came from to answer your question, Judge Gibbons. I think they're properly certified. The problem is they don't meet the exception under 8038, and if you take it for the position that the government has said, well, we don't have to worry about hearsay because they weren't offered for the truth of the matter, certainly they lose all probative value at that point. Another big evidentiary error that we contend infected this trial is the government did not charge my client or the co-appellant in a conspiracy to commit mail fraud. Yet the government spent three days offering testimony about what they called phase one of this overall scheme. My client wasn't involved in phase one. In the Appleese brief, the government says, well, there was one check for $3,700 that an investor said that he paid to my client, to Henry Raymer, regarding Clementsville, which was in phase one. But at most, that check would have gone to a single count of the indictment in the government, and its brief hasn't even tied it to one of the counts in the indictment. So the fact that this was not charged as a mail fraud conspiracy made the three days of testimony where my client's name didn't even come up, there was little to no probative value, but it was so prejudicial because phase one, in the government's own words, was a complete sham. In mail fraud cases, it really doesn't, you don't have to charge a conspiracy because an element of the offense itself is a scheme to defraud. So the scheme is relevant whether a conspiracy is charged or not. Well, they do recognize that, and the case law recognizes a separate charge of conspiracy. Oh, I'm not saying you couldn't have one, but the fact that you didn't have such a charge doesn't really matter given that the scheme is a part of the substantive mail fraud count, and the government still has to establish that. But what the government didn't establish was my client's substantial connection to all this stuff under phase one. I've only got 15 seconds left here. There was also newly discovered evidence that came up that we think warrants a new trial that's set forth in the briefs, and there were sentencing errors that we think at a minimum require remand for resentencing. My time is up, so unless there's any specific questions, I'm going to rely upon the contents of the written briefs, and then I'll have one minute to readdress anything that the appellee may raise. Thank you. Thank you. Good morning, Your Honors, and may it please the Court. I'm here this morning representing Mr. Wisteen, who was a defendant in the court below. I'd like to reserve two of my minutes for rebuttal, if I may. All right. And I'd like to focus the Court's attention this morning on the motion for the new trial, and I'd like to spend most of my time discussing that and why that requires a remand for a new trial in this case. Mr. Wisteen represented himself in this matter, and his defense was, I was selling these shares in the results of these oil wells, and I was misled by Mark Cornell as to the output of these oil wells. I, along with all of the investors, was duped by Mr. Cornell in the same fashion. That was his main defense before the jury in this matter. Mr. Cornell testified in Mr. Wisteen's case in this matter, and he testified in a very unusual way for a criminal case. Instead of Mr. Cornell getting up and testifying, here's how I met Mr. Wisteen, here's what we did, here's what our agreement was, they put Mr. Cornell on the stand and then almost immediately played a videotape of his statements to the FBI, which he had made a short time before trial. That videotape obviously wasn't subject to defense counsel for Mr. Wisteen being in the room or Mr. Wisteen being in the room. That was just a statement that was made to him or by him to the FBI agents. They put that on for approximately two and a half hours, and that was the large part, the sum and substance of Mr. Cornell's testimony. He was later called back on the second day of trial to clean up an issue that they had, but that was his testimony. Now after trial, Mr. Wisteen learns, and this is before sentencing, that Mr. Cornell was running what the government calls a parallel scheme, which is during the time that this alleged scheme is going on, this mail fraud scheme, Mr. Cornell also has separate clients that he is also duping with false promises and regarding oil wells that have nothing to do with this case, and he is using agreements which are substantially similar, if not exactly identical, to the documents that are used in this case. This obviously dovetails very nicely with the defense in this case, which Mr. Wisteen says, it was Mr. Cornell all along, it wasn't me. So he files this motion for a new trial, co-counsel files the motion for the new trial, and they have an evidentiary hearing on the issue, and the evidentiary hearing kind of had two parallel courses. One was, this is Brady evidence, and if it's not Brady evidence, it's newly discovered evidence which requires a new trial. And so because it was argued under Brady evidence, one of the main issues was, when did we learn about it, and what did we do with it? And kind of in an unusual fashion, once again, there was only one person called to the stand at that evidentiary hearing, and that was the AUSA that handled the case themselves, and that was still handling the case and continued to handle the case after that hearing. That was the only witness that was called. The issue was that there was evidence that the civil division of DFI had learned about Mr. Cornell, and so the question was, when did DFI learn about it, and when did they turn it over, and did the United States Attorney's Office have a duty, was it within their case file such that it was Brady evidence? They didn't call anybody from DFI. They didn't call the individual that first learned about the evidence. They didn't call the DFI criminal agent that sat in the criminal trial to talk about when they found out about it. Instead, the AUSA put himself on the stand. Assuming you get past the issue about whether there was a duty to turn over that evidence that the civil division had, and assuming that there was, what I find, and assuming that it would have been of some benefit perhaps to Mr. Weston, the problem I have is it's hard to see how it would have made a difference that would have met the Brady standard. I mean, there's a lot of evidence in this case. I mean, you've basically got two people who've done this same kind of scheme before, and one way or another, most of that evidence is admissible. And then you've got them going at it again, claiming they're too naive to know what's going on, and there's just a whole lot of proof here that indicates that's the story that's happening. Sure, and Your Honor, I think that the problem is that the district court judge evaluated what the import of this evidence was erroneously. And because the district court judge looked at it as a quantum of the credibility of Mr. Cornell, and that's how this was decided was that all of this evidence really goes to the credibility of Mr. Cornell, which was destroyed in trial anyway, and so therefore this is cumulative evidence, it's impeachment evidence. It really doesn't go to the core of can we get over the hump of all this other evidence that was made at the trial in this case. And I would suggest that, and again, this was not charged as a conspiracy to mail fraud. There were 29 discrete counts of mail fraud. And if you take a look at document 51, which is the superseding indictment in this case, we know from AUSA Taylor's testimony that at least in April of 2014, Cornell is doing these other transactions that are the parallel transactions. So we have, starting on count 22, so from counts 22 through 29, at a minimum, those cover the same time period as these parallel schemes. If Mr. Westing had had this information available to him at trial that he was running these parallel schemes, he could have pointed out to the jury and said, do you know that this mail fraud is this scheme or is it this alleged scheme? And he could have made that argument to the jury, and then it would have called into issue the other counts in the indictment. Because if you take a look at all – Do you believe that there would have been a viable path to claiming on behalf of Mr. Westing that the jury was supposed to separate out the transactions, and at the end of the day, it would have made a difference for Mr. Westing? It absolutely would have. Have I understood the theory right? Absolutely. Because if you take a look at the individual counts, like count 21 is JMAC to the Commonwealth of Kentucky. Count 22 is JMAC to the Commonwealth of Kentucky. Mr. Westing is not even named as the person that did the mail fraud in these. This is simply Mark Cornell sending something to the Commonwealth of Kentucky, or vice versa, the Commonwealth of Kentucky sending something to Mr. Cornell. So now you have to determine – a jury would have to determine – I see my time is up. I can finish my answer. The jury would have to determine, well, was this the Westing-Raymer alleged fraud, or was it the Cornell separate fraud? And how do we know, given that Cornell actually didn't testify to any of this? Thank you, Your Honor. Thank you. May it please the Court to give a good hand for the United States. I will address counsel's points in reverse order, if that's okay. Starting first with the new trial motion relating to Defendant Westing. The trial court did not abuse its discretion in concluding that the evidence A was cumulative. That was an express finding of the district court relating to all the evidence that the jury knew about the fraud that Cornell had engaged in. And on that point, I think this is critical, and this was a point that the AUSA made below. While the defendant argues that, oh, this could have shown a separate scheme, the AUSA below pointed out quite astutely, I would suggest, that actually what this showed was that Cornell had learned his craft from co-defendants Westing and Raymer. That is, if you look at the chronology of events, Cornell enters into this scheme to defraud with Westing and Raymer in 2013, October, September of 2013. He engages in this new side deal fraud in April of 2014. And what the AUSA argued to the trial court below was, you know what? This just shows that he learned very well. So this would have cut both ways if the defendant had this information. And, of course, we're in the Brady context, and I want to make it clear the government is not giving up on its argument that this was not something that was known to the government. This was, and in fact, it wasn't really known to anybody. We have testimony from the post-trial hearing that the doctors involved in this side deal fraud, those victims, they actually never even filed a complaint. And what the civil DFI people say is unless you file a complaint, we're not even going to start an open case. So that didn't happen until after the trials. I just want to make sure you understand we're not giving up on this possession notion. But more to the point. What is the factual record of that if the only person that testified is an assistant U.S. attorney? I mean, how did you make that record? Because he wouldn't have had any knowledge about that. Well, he did. We made the record two ways. They had gone back and done, they, the AUSAs and the USAO, they'd gone back and done an investigation in tandem with the DFI people, and in particular. So it was hearsay testimony that was admissible in that context. Yeah, exactly. He didn't have any personal knowledge. No. And I would add that Exhibit 1, I believe, to that post-trial hearing was a thick stack of e-mails back and forth between the DFI people and the USAO. So that goes, so in that respect, you know, we have to give, this court says in Harriet, that we should give a significant amount of deference to a trial court's decision making in the new trial motion context. And that makes perfect sense. This judge sat through an eight-day trial, heard all the evidence, knew what the jury knew about Mark Cornell, knew what the jury knew independently about the defendant's guilt on the charged offenses, and in, I think, a 15-page, very thorough opinion, concluded, you know what, this wouldn't have made a difference. They haven't shown and met their burden of reasonable probability of success, a different verdict. That decision is entitled to significant deference, and I think it's appropriate here. If there are any other questions, I'd be happy to address them. Turning now to the issues raised by Defendant Raymer, I made this, and I apologize if I'm misunderstanding this court's case law, but I read this court's case law for this proposition as articulated in United States v. Hathaway, which is 798 F. 2nd. 902. A foundation may be laid in whole by the testimony of a government agent or other person outside the organization whose records are sought to be admitted, all that is required is the witness be familiar with the record-keeping system. I do not understand this court's case law or any court's case law to stand for the proposition that that government agent has to walk into court and say, I knew that PNC Bank did this, this, and this. That's not how I understand it, and that's an abuse of discretion, decision-making call for the district court judge to assess whether or not that person is appropriate. Final point, I'll just note, all the three criteria were ticked off by DFI examiner Gibson, I believe, at record number 475, page 6380. So I think just on the bank records issue, that's really, the court did not abuse its discretion. Very quickly on this notion of phase one, first of all, this was an ongoing scheme. There aren't clear demarcations between phase one, phase two, and phase three. We've shown that we think Mr. Raymer was involved in phase one, number one. But number two, we allowed to show a scheme to defraud. We're allowed to show how it started. But number three, it's hard to see where the harm here is. The jury actually acquitted Mr. Raymer on counts two through six, which I think precisely overlap with the pre-August 2013 mailings. So apparently the jury heard Mr. Raymer's defense counsel below, went on cross-examination, and he said, hey, was that guy involved in phase one? Several witnesses said no. So in that respect, I think we're a little bit in the context of no harm, no foul. I feel like I've covered the points I wanted to cover. I'd be happy to address any questions that the court has. If the court has no additional questions, we would ask that you affirm the convictions and sentences below. All right. Roberto? Thank you, Your Honor. I take it I'm not going to get the 13 minutes and 55 seconds that's left there. Just quickly, with my one minute of rebuttal, the case cited in Mr. Raymer's reply brief, Dyno Construction Company v. McWane, Inc., 198F3, 567. It's a 1999 opinion of this court. It does say that a person outside the government agent or other person outside the organization can provide the required testimony to admit documents so long as the witness is, quote, be familiar with the record-keeping procedure of the organization. It would completely undo. The whole purpose behind hearsay is it's inherently unreliable. It's not subjected to cross-examination. There are defined exceptions, but they are exceptions that are intended to enhance reliability. You can't unring that bell. Yes, the jury found my client not guilty of counts two through six that were all phase one, but phase one was a total sham. There were no holes in the ground. There was no operator. My client was bootstrapped to Mr. Westing throughout the trial, so the jury couldn't possibly separate Westing's fraud in phase one when considering that my client was allegedly stepped, locked arm with him in counts two and three. I think that the fact that the jury found him not guilty shows that there was no probative value to that evidence. The district court did abuse its discretion in allowing it, and it should not have been admitted under FRA 401, 402, or 403. Thank you, Your Honor. Thank you. So there's a saying that hindsight is 20-20, but you have to take a look at the value of this evidence had it been available to the defense at the time of trial. The defense was it was Cornell, it wasn't me. What would the effect have been on the jury if they could hear that, in fact, Cornell was independently of Westing and Raymer running another scam that contained the same language, the same documentation? What would a jury have done with that? We don't know because this evidence wasn't made available to the defense by the time of trial. And I will say that we're also not giving up on this issue that this should have been turned over by the time of trial, and I'll point the court to a couple different things. Number one, on 7529, page ID 7529, he talks, he's trying to, AUSA Taylor's talking about how there's these two separate parallel organizations within DFI. There's a civil and there's a criminal, and they don't share information with each other. But what he says is, it's strictly what I've been told. They wall off the two investigations. You'd have to ask them exactly the parameters of each. And so here's the problem is that, again, I've argued the witness advocate rule. They didn't put on either of them so we could ask them the parameters of each. All we have is what he learned from talking with these folks. And he tells the court, you're going to have to ask them the parameters of how this works. He admits on 7561 that the defense in this case was that Westing argued it was Cornell, it wasn't him. And he also admitted that on 7538, Vaughn, who's the civil DFI person that had this information, Vaughn would have known that there was a criminal prosecution from the time of our indictment, I assume. So he admitted that civil DFI knew about the criminal prosecution in August of 2014, well before the trial. Yet somehow we're supposed to agree that these are walled off with each other. There should be a new trial in this matter based upon this evidence. Thank you, Your Honors. Thank you. And Mr. Guarniera, I hope I'm pronouncing that correctly. I know you accepted this case under the Criminal Justice Act and the court very much would like to thank you for your service. I know you do it as a service to the court and our system of justice, so thank you. And the case is submitted.